IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–00827–EWN–CBS

KIM HACKWELL; and
KILLIAN, GUTHRO & JENSEN, P.C.,

      Plaintiffs,

v.

UNITED STATES OF AMERICA;
DEPARTMENT OF JUSTICE;
ATTORNEY GENERAL JOHN ASHCROFT and His Successors in Office; and,
DIRECTOR TORTS BRANCH, CIVIL DIVISION, TIMOTHY GARREN and
His Successors in Office,

      Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

Plaintiffs' claims in this case arise under the Administrative Procedure Act ("APA") and

the United States Constitution.  Plaintiffs Kim Hackwell and Killian, Guthro & Jensen, P.C.,

allege that Defendants United States of America, Department of Justice, John Ashcroft in his

official capacity, and Timothy Garren in his official capacity, violated (1) the APA, 5 U.S.C. §

706, by exceeding statutory authority in implementing 28 C.F.R. § 79.74(b); (2) the

Congressional intent of the Radiation Exposure Compensation Act ("RECA") by requiring

attorneys to pay costs; (3) the Due Process Clause of the Fifth Amendment by voiding existing

-1-

contracts; (4) the Takings Clause of the Fifth Amendment by interfering with existing contracts;

and (5) Plaintiffs' rights to access to the courts.  This matter is before the court on "Defendants'

Motion to Dismiss," filed November 12, 2004.  Jurisdiction is based on 28 U.S.C. § 1331.

## FACTS

### 1.      Factual Background

The following facts are taken from Plaintiffs' complaint and the parties' submissions with

respect to the matter before the court.  Plaintiffs assert that "[i]n promulgating 28 C.F.R. §

79.74(b), the Department of Justice ["the Agency"] exceed[ed] the authority granted by

Congress to establish regulations necessary to implement the RECA legislation."  (Am. Compl. §

13 [filed Aug. 3, 2004] [hereinafter "Am. Compl."].)  Plaintiffs contend that the Agency made 28

C.F.R. § 79.74(b) final on April 22, 2004, and it is a final agency action for which there is no

adequate remedy in a court, thus it is subject to judicial review pursuant to the APA.  (*Id.* ¶ 12.)

The RECA established the Radiation Exposure Compensation Trust Fund to provide

compensation to qualified radiation victims and authorized the Attorney General to administer a

program for processing the claims of victims.  42 U.S.C. § 2210.  Section nine of the RECA

imposed a limit on the fees of attorneys representing claimants.  42 U.S.C. § 2210 note Sec. 9.

Specifically, section nine states "[n]otwithstanding any contract, the representative of an

individual may not receive, for services rendered in connection with the claim of an individual

under this Act, more than [ten] per centum of a payment made under this Act on any such

claim."  *Id.*

In 2000, Congress amended the RECA.  Pub. L. 106–245, § 9, 114 Stat. 501 (2000).

Section nine now provides:

(a)     General Rule.  Notwithstanding any contract, the representative of an individual may not receive, for services rendered in connection with the claim of an individual under this Act, more than that percentage specified in subsection (b) of a payment made under this Act on such a claim.

(b)     Applicable Percentage Limitations.  The percentage referred to in subsection (a) is —

(1)     [two] percent for the filing of an initial claim; and

(2)     [ten] percent with respect to —

(A)     any claim with respect to which a representative has made a contract for services before the date of the enactment of the Radiation Exposure Compensation Act Amendments of 2000; or

(B)     a resubmission of a denied claim.

42 U.S.C. § 2210 note Sec. 9.

On March 23, 2004, the Agency issued final regulations to implement the 2000

Amendments.  29 C.F.R. § 79.74 (2005).  In relevant part, the regulations state:

(b)     Fees.

(1)     Notwithstanding any contract, the attorney of a claimant or beneficiary, along with any assistants or experts retained by the attorney on behalf of the claimant or beneficiary, may not receive from a claimant or beneficiary any fee for services rendered, including costs incurred, in connection with an unsuccessful claim.

(2)     Notwithstanding any contract and except as provided in paragraph (b)(3) of this section, the attorney of a claimant or beneficiary, along with any assistants or experts retained by the attorney on behalf of the claimant or beneficiary, may receive from a claimant or beneficiary no more than [two percent] of the total award for all services rendered, including costs incurred, in connection with a successful claim.

(3)     (i)     If any attorney entered into a contract with the claimant or beneficiary for services before July 10, 2000, with respect

-3-

> to a particular claim, then that attorney may receive up to
> [ten percent] of the total award for services rendered,
> including costs incurred, in connection with a successful
> claim.
>
> (ii)     If an attorney resubmits a previously denied claim, then
>          that attorney may receive up to [ten percent] of the total
>          award to the claimant or beneficiary for services rendered,
>          including costs incurred, in connection with that
>          subsequently successful claim.  Resubmission of a
>          previously denied claim includes only those claims that
>          were previously denied and refiled under the Act.

*Id.*

**2.     *Procedural History***

Plaintiff Killian, Guthro & Jensen, P.C. ("Killian") filed a complaint in this court on April

21, 2004.  (Compl. [filed Apr. 21, 2004].)  Plaintiff Killian filed two claims styled: (1) "Hold

Unlawful and Set Aside — 28 C.F.R. § 79.74;" and (2) "Relief Pending Review — 5 U.S.C. §

705."  (*Id.* ¶¶ 6–10.)  On August 3, 2004, Plaintiff Killian filed an amended complaint.  (Am.

Compl.)  Plaintiff Killian added Plaintiffs Kim Hackwell and Twenty John and Jane Does

Representing RECA clients of Plaintiff Killian.  (*Id.*)  Plaintiffs asserted six claims styled: (1) "28

C.F.R. § 79.74(b) Violates the APA, 5 U.S.C. § 706, Which Prohibits Regulations From

Exceeding Statutory Authority;" (2) "28 C.F.R. § 79.74(b) Violates the Congressional Intent of

RECA by Requiring Attorneys to Pay All Costs;" (3) "The Revision of 28 C.F.R. § 79.74(b)

Impairs Vested Rights in Violation of the Due Process Clause of the Fifth Amendment;" (4) "The

Revision of 28 C.F.R. § 79.74(b) Impairs Vested Rights in Violation of the Takings Clause of the

Fifth Amendment;" (5) "28 C.F.R. § 79.74(b) Unjustifiably Deprives RECA Claimants of Their

Rights to Access to Court;" and (6) "28 C.F.R. § 79.74(b) is Inconsistent With the Colorado

Rules of Professional Conduct and Thereby Violates the Tenth Amendment." (*Id.* ¶¶ 11–53.)

On November 15, 2004, Defendants filed a motion to dismiss.  (Defs.' Mot. to Dismiss

[filed Nov. 12, 2004] [hereinafter "Defs.' Br."].)  Defendants argue that (1) the court lacks

jurisdiction over the twenty unnamed Plaintiffs and Plaintiff Hackwell; (2) the Agency's

regulation comports with the APA; (3) the Agency's interpretation of the compensation

limitation provision is consistent with Congressional intent; (4) the Agency's regulation does not

impair contract rights in violation of the Fifth Amendment's Due Process clause or the Takings

clause; and (5) the regulation does not impair the constitutional right of access to the courts.  (*Id.*

at 13–67.)  On January 18, 2005, Plaintiffs filed their opposition to Defendants' motion to

dismiss.  (Pls.' Opp'n to Defs.' Mot. to Dismiss [filed Jan. 18, 2005] [hereinafter "Pls.'

Resp."].)  On January 24, 2005, Plaintiffs voluntarily dismissed the twenty Jane and John Does.

(Notice of Dismissal of John and Jane Does [filed Jan. 24, 2005].)  On March 4, 2005,

Defendants filed a reply in support of their motion to dismiss.  (Reply to Pls.' Opp'n to Defs.'

Mot. to Dismiss [filed Mar. 4, 2005] [hereinafter "Defs.' Reply"].)

## ANALYSIS

### 1.    *Standard of Review*

For the purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

court should only dismiss the claim "when it appears that the plaintiff can prove no set of facts

in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of

the complaint as true and construing them in the light most favorable to the plaintiff." *Dubbs v.*

*Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 [10th Cir. 1997]).  "'The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" *Id.* (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 [10th Cir. 1999]).

When a party seeks review of an agency action under the APA, the district judge sits as an appellate tribunal. *Am. Bioscience, Inc., v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2002). The entire case on review is a question of law.  *Id.*  In the agency review context, there is no real distinction between questions presented in a Rule 12(b)(6) motion to dismiss and a motion for summary judgment.  *Id.*

**2.    *Evaluation of Claims***

Defendants allege that Plaintiffs' claims should be dismissed in their entirety.  As stated above, Plaintiffs' assert six claims for relief styled: (1) "28 C.F.R. § 79.74(b) Violates the APA, 5 U.S.C. § 706, Which Prohibits Regulations From Exceeding Statutory Authority;" (2) "28 C.F.R. § 79.74(b) Violates the Congressional Intent of RECA by Requiring Attorneys to Pay All Costs;" (3) "The Revision of 28 C.F.R. § 79.74(b) Impairs Vested Rights in Violation of the Due Process Clause of the Fifth Amendment;" (4) "The Revision of 28 C.F.R. § 79.74(b) Impairs Vested Rights in Violation of the Takings Clause of the Fifth Amendment;" (5) "28 C.F.R. § 79.74(b) Unjustifiably Deprives RECA Claimants of Their Rights to Access to Court;" and (6) "28 C.R.R. § 79.74(b) is Inconsistent With the Colorado Rules of Professional Conduct and

Thereby Violates the Tenth Amendment." (Am. Compl. ¶¶ 11–53.) Defendants allege that (1) this court does not have jurisdiction over the twenty unnamed Plaintiffs or Plaintiff Hackwell,[1] (Defs.' Br. at 15); (2) the Agency's regulation comports with the APA, (*id.* at 17–28); and (3) the Agency's regulation does not impair vested contract rights in violation of the Fifth Amendment Due Process or Takings clauses. (*Id.* at 29–67.) I address Plaintiffs' claims, somewhat out of order, below.

>    **a.**     ***Plaintiffs' Fifth Claim For Relief — Plaintiff Hackwell's "Access to the Courts"[2]***

Plaintiffs' allege that:

> [b]ecause of the requirements of 28 C.F.R. § 79.74(b), attorneys will not be financially or ethically able to represent certain individuals, such as [P]laintiff Hackwell, thereby depriving them of legal representation and successful prosecution of their complex claims, which require attorney expertise to successfully prosecute. . . . Defendants' official actions in adopting 28 C.F.R. § 79.74(b) impose a frustrating condition upon [P]laintiff Hackwell, and others similarly situated.

(Am. Compl. ¶¶ 31, 36.) Plaintiffs allege that "Killian . . . declined to assist [P]laintiff Hackwell in her RECA claim because of these complexities and the associated anticipated expenses involved in resolving these issues." (*Id.* ¶ 42.) Defendants contend that Plaintiff Hackwell does not have standing to pursue her claim regarding access to the courts. (Defs.' Br. at 15.)

---

[1]Plaintiffs dismissed this case with respect to the twenty unnamed Jane and John Does, therefore, I do not need to address Defendants' arguments with respect to these Plaintiffs.

[2]Plaintiffs only asserts this claim with respect to Plaintiff Hackwell.

The doctrine of standing asks "whether a litigant is entitled to have a federal court resolve [her] grievance." *Kowalski v. Tesmer*, 125 S. Ct. 564, 567 (2004).  The inquiry involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise. *Id.*  The constitutional limitations flow from Article III's case-or-controversy requirement.  *Id.*

To satisfy Article III, a party must demonstrate an "injury in fact."  *Id.*  Specifically, a plaintiff must allege facts that show (1) he or she suffered an injury in fact that is both "(a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; (2) there exists a causal connection between the injury and the conduct complained of; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  Plaintiffs contend that Plaintiff Hackwell cannot succeed on her claim without attorney representation and she has been denied access to the courts because Plaintiff Killian declined to represent her.  (Am. Compl. ¶ 44.) Accepting Plaintiffs' allegations as true, Plaintiff Hackwell has not asserted an injury in fact. Plaintiff Hackwell has not asserted that she has made efforts to secure alternative legal counsel and failed.  Rather, Plaintiffs' complaint merely states that Plaintiff Killian declined to represent Plaintiff Hackwell and further hypothesizes that Plaintiff Hackwell will not be able to secure legal counsel.  As stated above, Plaintiff Hackwell must allege an injury that is "actual and imminent, not conjectural or hypothetical."  *See Lujan*, 504 U.S. at 560–61.

Plaintiff Hackwell asserts that her injury arises out of the fact that "she has been unable to retain representation by counsel of her choice because of the Agency's . . . limits on attorney

compensation." (Pls.' Resp. at 2.) In support, Plaintiffs cite to *Wheat v. United States*, 486 U.S. 153, 159 (1988). The Supreme Court in *Wheat* stated that in a criminal context,

> while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers . . . a defendant may not insist on representation by an attorney he cannot afford *or who for other reasons declines to represent the defendant.*

*Id.* at 159 (internal citations omitted) (emphasis added). Thus, Plaintiff Hackwell has not directed this court to any law in support of her position that simply because one law firm has declined to represent her, she was denied access to the courts.

Further, Plaintiff Hackwell contends that this result confuses "the requirements for standing with the elements of a successful claim on the merits for violation of the constitutional right to counsel or right to access to the courts." (Pls.' Resp. at 2.) Plaintiffs' argument is nonsensical. Standing is a jurisdictional requirement that a court must address prior to addressing the merits of any claim. *Bd. of County Comm'r of Sweetwater County v. Geringer*, 297 F.3d 1108, 1111 (10th Cir. 2002). "Standing is a threshold issue in every case." *Id.* Plaintiffs' "access to the courts" claim is entirely contingent upon Plaintiff Hackwell's allegation of an injury in fact. Accordingly, I dismiss Plaintiffs' fifth claim for relief, asserting that "[D]efendants' action in promulgating and adopting 28 C.F.R. § 798.74(b) has denied [P]laintiff Hackwell access to the courts." (Am. Compl. ¶ 44.)[3]

_____

[3]Plaintiffs argue that "[t]he firm also has standing to assert the rights of [Plaintiff] Hackwell, who was not a hypothetical future client, but one who has a relationship with the firm." (Pls.' Resp. at 3.) Plaintiff Killian does not have standing to sue on behalf of Plaintiff

**b.      Plaintiffs' First and Second Claims For Relief — "28 C.F.R. § 79.74(b)
         Violates the APA"**

Plaintiffs' first claim for relief is styled as "28 C.F.R. § 79.74(b) Violates the [APA], 5

U.S.C. § 706, Which Prohibits Regulations From Exceeding Statutory Authority." (Am. Compl.

¶¶ 11–14.) Plaintiffs' second claim for relief is styled as "28 C.F.R. § 79.74(b) Violates the

Congressional Intent of RECA by Requiring Attorneys to Pay All Costs." (*Id.* ¶¶ 15–18.)

Defendants assert that these claims must be dismissed because Plaintiffs failed to assert a claim

upon which relief can be granted.

**(1)      The Agency Did Not Exceed Its Statutory Authority in Promulgating 28
          C.F.R. § 79.74(b)**

Plaintiffs' first claim alleges that Defendants exceeded their statutory authority, and thus

violated the APA, in enacting 28 C.F.R. § 79.74(b), which implements Congress's reduction in

the amount of compensation payable to a claimants' representatives. (*Id.* ¶¶ 11–14.) Plaintiffs

object to the Agency's express inclusion of "costs" in the delineation of compensation subject to

limitation. (*Id.* ¶¶ 17–18.) Specifically, Plaintiffs allege that "[t]he central issue presented to this

[c]ourt is whether RECA's limitation on payments to attorneys 'for services rendered' includes

reimbursements for costs [or expenses] incurred in connection with the claim." (*Id.*) The costs

or expenses at issue are expenses that "primarily relate to obtaining medical tests and purchasing

and transmitting copies of documents required for RECA claims." (*Id.*) Plaintiffs' claims do not

_____

Hackwell because Plaintiff Hackwell does not have standing in her own right. *Public Citizen, Inc.
v. Bomer* 275 F.3d 212, 219 (5th Cir. 2001) (noting that plaintiff's lawyers lacked standing to
sue on behalf of their clients because their clients lacked standing to sue in their own right. *See
also Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

pertain to costs that are traditionally taxed by the court pursuant to 28 U.S.C. § 1920.  (*Id.*)  In

the interest of clarity, I refer to the "costs" at issue in the regulation as "expenses" throughout

this Order and Memorandum of Decision.

　　　The threshold question for a court reviewing an agency's construction of a statute which

it administers is "whether Congress has directly spoken to the precise question at issue."

*Chevron, U.S.A. v. Natural Res. Defense Council*, 467 U.S. 837, 842 (1984).  "'If the statute is

clear and unambiguous 'that is the end of the matter, for the court, as well as the agency, must

give effect to the unambiguously expressed intent of Congress.'"  *K Mart Corp. v. Cartier, Inc.*,

486 U.S. 281, 291 (1988) (quoting *Board of Governors, FRS v. Dimension Fin. Corp.*, 474 U.S.

361, 368 [1986]).

　　　The RECA provides that "[n]othwithstanding any contract, the representative of an

individual may not receive, for services rendered in connection with the claim of an individual

under this Act, more than [ten] per centum of a payment made under this Act on any such

claim." 42 U.S.C. § 2210 not Sec. 9.  On April 10, 1992, the Agency's regulations implementing

the RECA were issued in final form.  Claims Under the Radiation Exposure Compensation Act,

57 Fed. Reg. 12428 (Dep't of Justice Apr. 10, 1992) (final admin. review) (1992).  The

regulations are clear that claimants are not required to retain attorneys in order to participate in

the program.  See 28 C.F.R. § 79.54(a) (1992).  Prior to March 23, 2004, the regulation

implementing Congress's limitation on the compensation available to a claimants' representatives

stated: "[*t*]*he total compensation payable* to the attorney by the claimant or eligible surviving

beneficiary may not exceed ten percent of the amount of the payment to that person."  28 C.F.R.

§ 79.54(c) (1992) (emphasis added).  In 2000, Congress enacted the RECA amendments.  Pub. L. 106–245, § 9, 114 Stat. 501 (2000).  Section nine now provides:

<blockquote>

(a)   General Rule.  Notwithstanding any contract, the representative of an individual may not receive, for services rendered in connection with the claim of an individual under this Act, more than that percentage specified in subsection (b) of a payment made under this Act on such a claim.

(b)   Applicable Percentage Limitations.  The percentage referred to in subsection (a) is —

(1)   [two] percent for the filing of an initial claim; and

(2)   [ten] percent with respect to —

(A)   any claim with respect to which a representative has made a contract for services before the date of the enactment of the Radiation Exposure Compensation Act Amendments of 2000; or

(B)   a resubmission of a denied claim.

</blockquote>

42 U.S.C. § 2210 note Sec. 9.

On March 23, 2004, the Agency issued final regulations to implement the 2000 Amendments.  28 C.F.R. § 79.74 (2005).  In relevant part, the regulation states:

<blockquote>

(b)   Fees.

(1)   Notwithstanding any contract, the attorney of a claimant or beneficiary, along with any assistants or experts retained by the attorney on behalf of the claimant or beneficiary, may not receive from a claimant or beneficiary any fee for services rendered, including costs incurred, in connection with an unsuccessful claim.

(2)   Notwithstanding any contract and except as provided in paragraph (b)(3) of this section, the attorney of a claimant or beneficiary, along with any assistants or experts retained by the attorney on behalf of the claimant or beneficiary, may receive from a claimant or beneficiary no more than [two percent] of the total award for all services rendered, including costs incurred, in connection with a successful claim.

(3)   (i)   If any attorney entered into a contract with the claimant or beneficiary for services before July 10, 2000, with respect

</blockquote>

-12-

> to a particular claim, then that attorney may receive up to [ten percent] of the total award for services rendered, including costs incurred, in connection with a successful claim.
>
> (ii) If an attorney resubmits a previously denied claim, then that attorney may receive up to [ten percent] of the total award to the claimant or beneficiary for services rendered, including costs incurred, in connection with that subsequently successful claim. Resubmission of a previously denied claim includes only those claims that were previously denied and refiled under the Act.

*Id.* In implementing the RECA 2000 amendments, the Agency determined that expenses — primarily related to obtaining medical tests and purchasing and transmitting copies of documents required for RECA claims — were necessarily "services rendered in connection with the claim of an individual under this Act." See 42 U.S.C. § 2210 note Sec. 9. The Agency's interpretation reflects the unambiguous intent of Congress. Congress did not limit its language to exclude attorneys' expenses and include only attorneys' hourly wages. The Agency did not exceed its statutory authority in implementing Congress's compensation limitation. Congress granted the Agency broad authority to issue "such regulations as are necessary to carry out this Act." 42 U.S.C. § 2210 note Sec. 6(j). The Agency's regulations, primarily 28 C.F.R. § 79.74, are congruent with the statutory language.

Plaintiffs argue that "[u]nder no commonly accepted meaning or usage does the statutory language encompass reimbursement for expenses that are neither compensation to the attorney nor paid in exchange for the attorney's services." (Pls.' Resp. at 9.) In support, Plaintiffs cite to three treatises and four state rules of professional conduct. (*Id.* at 9–11.) Ironically, at least one

of the treatises supports the Agency's interpretation of the RECA and states that "[t]he right of the attorney to be reimbursed for expenses in litigation . . . follows as a matter of law from his making the advances . . ." (*Id.* at 9.)  Further, Plaintiffs allege that "[t]he rule that the client, not the attorney, is ultimately responsible for expenses has historically been dictated by state laws against champerty and by professional ethical rules." (*Id.* at 10.)  Most courts and the American Bar Association ("ABA") have "jettisoned" these archaic rules.  *Rand v. Monsanto Co.*, 926 F.2d 596, 600 (7th Cir. 1991); *Boccardo v. Comm'r of Internal Revenue*, 56 F.3d 1016, 1019 (9th Cir. 1995).  "[S]o far as we can tell, [the rule against lawyers bearing costs] serves no purpose.  The ABA has jettisoned, and the states are in the process of replacing, this relic of the rules against champerty and barratry." *Rand*, 926 F.2d at 600.  The Ninth Circuit, in recognizing the Sixth Circuit's decision in *Rand*, and noting the "jettison" of the old rule, "applauded" the result of moving away from a system where lawyers cannot shoulder the costs of litigation. *Boccardo*, 56 F.3d at 1019.  Thus, Plaintiffs' argument as to this point is unavailing.  Accordingly, Plaintiffs' first claim for relief is denied.

### (2)     *The Agency's Interpretation of the Compensation Limitation is Reasonable and Consistent With Congressional Intent*

Plaintiffs' second claim for relief is styled as "28 C.F.R. § 79.74(b) Violates the Congressional Intent of RECA by Requiring Attorneys to Pay All Costs." (Am. Compl. ¶¶ 15–18.)  Even when Congress grants an agency the authority to make "such rules and regulations as may be necessary to carry out the provisions of [the Act], the validity of a regulation promulgated thereunder will be sustained as long as it is reasonably related to the purposes of

enabling legislation." *Mourning v. Family Publ'n Serv., Inc.*, 411 U.S. 356, 369 (1973). If the agency regulation is not in conflict with the plain language of the statute, a reviewing court must give deference to the agency's interpretation of the statute. *K Mart Corp.*, 486 U.S. at 292. This standard may be satisfied even if the court finds that the agency's interpretation is not "the best interpretation of the statute." *Atl. Mut. Ins. Co. v. C.I.R.*, 523 U.S. 382, 389 (1998). Agency interpretation, even reasonable ones, are not entitled to deference if they are inconsistent with Congressional intent. *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 454 (1987).

First, the Agency's interpretation that the language "services rendered in connection with the claim of an individual under this Act" necessarily includes an attorney's expenses evinces the purpose behind the RECA. The RECA trust fund was enacted for the primary benefit of the victims. The purpose of the RECA is to "establish a procedure to make partial restitution to the individuals described in subsection (a) for the burdens they have borne for the Nation as a whole." 42 U.S.C. § 2210 note Sec. 2. In addition to the compensation provision at issue in this case, the RECA contains a provision that "[n]o costs incurred by the Attorney General in carrying out this section shall be paid from the Fund or set off against, or otherwise deducted from, any payment under this section to any individual." 42 U.S.C. § 2210 note Sec. 6(f). Thus, the Agency's interpretation of the compensation limits in the RECA is a reasonable interpretation of Congress's intent an purpose in enacting the RECA.

Further, the Agency's interpretation that the language "services rendered in connection with the claim of an individual under this Act" necessarily includes an attorney's expenses is buttressed by case law regarding fee-shifting statutes. Several statutes, most notably 42 U.S.C. §

-15-

1988, provide for courts to award " a reasonable attorney's fee" to prevailing parties in certain

lawsuits.  In evaluating the term "attorneys' fees" under section 1988, the Tenth Circuit

determined that "'Reasonable attorneys' fees . . . must include reasonable expenses because

attorneys' fees and expenses are inseparably intertwined as equally vital components of the costs

of litigation.'"  *Brown v. Gary*, 227 F.3d 1278, 1297 (10th Cir. 2000) (quoting *Dowdell v. City of*

*Apopka*, 698 F.2d 1181, 1190 [11th Cir. 1983]).  The court went on to note that "reasonable out-

of-pocket expenses not normally absorbed as part of law firm overhead should be reimbursed as

attorney's fees . . ."  *Id.*; *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283

(2d Cir. 1987) ("attorney's fees include expenses that are incidental and necessary to the

representation, provided they are reasonable."); *Henry v. Webermeier*, 738 F.2d 188, 192 (7th

Cir. 1984) ("the case law overwhelmingly supports the proposition that attorneys' fees includes

out-of-pocket expenses"); *Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir. 1983) (same);

*Northcross v. Board of Ed. of Memphis City Schools*, 611 F.2d 624, 639 (6th Cir. 1979) (same).

In fact, Plaintiffs agree that certain expenses are "included in the concept of attorney's fees as

incidental and necessary expenses incurred in furnishing effective and competent representation."

(Pls.' Resp. at 18 [quoting *Brown*, 227 F.3d at 1297].)  Thus, the Agency's interpretation that

the compensation limitation includes expenses in the total amount payable to an attorney

comports with Congress's intent in adopting the RECA.  Accordingly, Plaintiffs' second claim

for relief is denied.

Plaintiffs offer numerous arguments that counsel against this result.  First, Plaintiffs argue

that the comparison of the RECA's limit on attorney compensation with fee-shifting statutes is

unreasonable. (Pls.' Resp. at 15–20.) Plaintiffs argue that "[f]ees awarded under [section] 1988 are deemed to include reimbursable expenses, based on a definition of attorney's fees that is peculiar to the fee-shifting statue and departure from the usual meaning of that term." (*Id.* at 17.) In support, Plaintiffs cite the dissenting opinion by Chief Justice Rehnquist in *Missouri v. Jenkins*, 491 U.S. 274 (1989). (*Id.* at 18.) The Chief Justice's dissent is not binding precedent on this court. Additionally, Plaintiffs cite *Gisbrecht v. Barnhart*, 535 U.S. 789, 802 (2000), for the proposition that "fee-shifting statutes are of a completely different 'genre.'" (*Id.* at 19–20.) The court in *Gisbrecht* did not discuss whether attorney's fees should include attorney's expenses. *Gisbrecht*, 535 U.S. at 802–03. Rather, *Gisbrecht* reiterated that "[s]everal statutes governing suits against the United States provide that fees may be paid from the plaintiff's recovery." *Id.*

Second, Plaintiffs argue that "[f]ederal courts have universally construed attorney's fees to include expenses that are ordinarily reimbursed to the attorney separately from the attorney's fee." (*Id.* at 18.) In support Plaintiffs cite *Brown*. As stated above, *Brown* held that reasonable attorneys' fees must include reasonable expenses. *Brown*, 227 F.3d at 1297. Plaintiffs' argument to the contrary is disingenuous.

Next, Plaintiffs contend that:

> [f]ar more relevant to this case are those statutes that impose a limit on the amount that a party can pay his or her own attorney. Examination of such statutes . . . support Plaintiffs' position that in the absence of explicit congressional direction to include expenses within the limit on attorney fees, such statutes permit attorneys reimbursement of expenses in addition to their attorney fees.

-17-

(Pls.' Resp. at 20.)  In support, Plaintiffs cite to *Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305 (1985).  *Walters* evaluated 38 U.S.C. § 301, providing claims for service-connected death or disability benefits to veterans.  *Id.*  *Walters* itself does not address whether attorney's fees necessarily include expenses, but, Plaintiffs rely on the *Walters* defendant's brief in that case, apparently acknowledging that the "limitation . . . to the fees of an agent or attorney" does not include "reimbursement for expenses incurred in connection with the claim." (Pls.' Br. at 20.)  The *Walters* defendants' respective arguments in their submission to the Court is not persuasive as to the issues in this case.  Thus, Plaintiffs' reliance on *Walters* is misplaced.

Finally, Plaintiffs cite to *Wyatt v. United States*, 783 F.2d 45, 46 (6th Cir. 1986), for the proposition that "the Sixth Circuit appears to approve the reimbursement of counsel's expenses out of the award separate from the payment of the maximum allowable fee." (Pls.' Resp. at 21.) *Wyatt* does not stand for this proposition, and in fact, the *Wyatt* court did not consider this issue. "Attorney for plaintiffs apparently does not contest for purposes of this appeal the deduction of litigation expenses before applying the 25% for the attorney's fee.  We therefore do not have occasion to address this matter."  *Wyatt*, 783 F.2d at 46 n.4.

**c.**    ***Plaintiffs' Third and Fourth Claims For Relief — Violation of the Fifth Amendments Due Process and Takings Clauses***

Plaintiffs contend that the Agency's regulation "frustrates and unduly interferes with [P]laintiff Killian['s] investment-backed expectations in fulfilling existing contracts with RECA clientele," and that it "denies [Plaintiff] Killian . . . the economic viability of its contracts with its RECA clientele." (Am. Compl. ¶¶ 28–29.)  Based on these allegations, Plaintiffs allege that the

-18-

Agency's regulations violate the Takings and Due Process Clauses of the Fifth Amendment. (*Id.*)
The parties agree that Plaintiffs' Takings and Due Process arguments are entirely dependent on
Plaintiffs' characterization of the Agency's regulations as "retroactively" including expenses
within the applicable payment limitations. (Defs.' Reply at 18; Pls.' Resp. at 22.)

   "A statute or administrative regulation does not operate retroactively merely because it
applies to prior conduct; rather, a statute or regulation has retroactive effect if it 'would impair
rights a party possessed when he acted, increase [his] liability for past conduct, or impose new
duties with respect to transactions already completed.'" *Georgia Power Co. v. Teleport
Commc'n Atlanta, Inc.*, 346 F.3d 1033, 1043 (11th Cir. 2003) (quoting *Landgraf v. USI Film
Prods.*, 511 U.S. 244, 280 [1994]); *see also I.N.S. v. St. Cyr*, 533 U.S. 289, 321 (2001);
*Resolution Trust Corp. v. Ford Motor Credit Corp.*, 30 F.3d 1384, 1388 (11th Cir. 1994). "The
inquiry into whether a statute or agency regulation operates retroactively demands a
commonsense, functional judgment about 'whether the new provision attaches new legal
consequences to events completed before its enactment.'" *Martin v. Hadix*, 527 U.S. 343, 357–
358 (1999) (quoting *Landgraf*, 511 U.S. at 270). The judgment regarding whether a particular
statute or regulation acts retroactively "should be informed and guided by 'familiar considerations
of fair notice, reasonable reliance, and settled expectations.'" *Martin*, 527 U.S. at 358 (quoting
*Landgraf*, 511 U.S. at 270).

   The Agency's regulation, 28 C.F.R. § 79.74, did not create a new rule. As discussed
above, the RECA language limiting an attorney's recoverable fees to "services rendered in
connection with the claim of an individual under this Act" necessarily covers the attorneys'

expenses complained of by Plaintiffs. *See Analysis*, § 2(b), *supra*. Moreover, the Agency's interpretation of that language has been consistent. The scope of the compensation limitation was expressly defined in the Agency regulation predating the one at issue here. The 1992 regulations implementing the RECA, stated "[t]he total compensation payable to the attorney by the claimant or eligible surviving beneficiary may not exceed ten percent of the amount of the payment to that person." 28 C.F.R. § 79.54 (1992). The language "total compensation payable" is very broad and necessarily includes the attorney's expenses. Further, based on the analysis above, an attorney's expenses are included in compensation payable to that attorney. *See Analysis*, § 2(b), *supra*. Accordingly, the Agency's 2004 regulation, 28 C.F.R. § 79.74, does not have a retroactive effect, because, while it affects prior conduct of the parties, it cannot be said that it "impair[s the] rights a party possessed when he acted." Plaintiffs' did not have the right to exclude expenses from the total compensation payable to them under the language of the RECA, the 1992 Agency regulations, or the 2004 Agency regulations. 28 C.F.R. § 79.74 does not attach any new legal consequences to Plaintiffs.

Plaintiffs do not offer any substantive argument that counsels against this result. (Pls.' Resp. at 23.) Plaintiffs simply allege that there is a presumption against retroactive legislation. (*Id.*) While this may be true, the Agency regulation at issue in this case does not have a retroactive effect. Accordingly, Plaintiffs' third and fourth claims for relief for violation of the Due Process and Takings Clauses of the Fifth Amendment is denied.

### d.      Plaintiffs' Sixth Claim For Relief – Violation of the Tenth Amendment

Plaintiffs' sixth claim for relief alleges that 28 C.F.R. § 79.74(b) is inconsistent with the

Colorado Rules of Professional Conduct ("Colorado Rules").  Thus, claims Plaintiffs, the Agency

regulation violates the Tenth Amendment.  (Am. Compl. ¶¶ 46–53.)  The Colorado Rule at issue

states that: "[w]hile representing a client in connection with contemplated or pending litigation, a

lawyer shall not advance or guarantee financial assistance to the lawyer's client, except that a

lawyer may advance or guarantee the expenses of litigation . . ."  Colo. R. Prof. Cond. 1.8(e).

Plaintiffs allege that if Plaintiff Killian violates this rule, it "risk[s] civil punishment by the State

of Colorado, up to and including disbarment." (Am. Compl. ¶ 51.)  Plaintiffs allege that the

regulation impermissibly interferes with the Tenth Amendment and that "Congress did not

intend for RECA to interfere with the longstanding and historic state regulation of attorneys."

(*Id.* ¶¶ 52–53.)

To the extent that the Colorado Rule directly conflicts with the Agency's regulation,

which is not clear in this case, the Colorado Rule is inoperative.  "[W]here Congress has not

completely displaced state regulation in a specific area, state law is nullified to the extent that it

actually conflicts with federal law." *Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S.

141, 153 (1982).  Such a conflict arises when "'compliance with both federal and state regulations

is a physical impossibility,' or when state law 'stands as an obstacle to the accomplishment and

execution of the full purposes and objectives of Congress.'"  *Id.* (quoting *Florida Lime &*

*Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 [1963]; *Hines v. Davidowitz*, 312 U.S. 52,

67 [1941]).  These principles are not inapplicable simply because the regulations at issue involve

matters of special concern to the states. *Id.* Further, federal regulations have no less pre-emptive effect than federal statutes. *Id.* at 154. Said another way, "the law of the State, though enacted in the exercise of powers not controverted, must yield when incompatible with federal legislation." *Sperry v. State of Fla. ex. rel. Florida Bar.*, 373 U.S. 379, 384 (1963).

The instant case is analogous to *Sperry*. In *Sperry*, the State of Florida sought to enjoin a non-licensed individual from holding himself out to the public as a patent attorney and representing clients in the proceedings before the patent office in Florida. *Id.* at 381. The Supreme Court reasoned that while the individual's activities may constitute the illegal practice of law in Florida, Congress had delegated the Commissioner of Patents authority to prescribe regulations governing the recognition or conduct of representatives appearing before the patent office, and the Commissioner of Patents issued a regulation enabling non-lawyers to appear. *Id.* at 385. In dismissing the respondent's Tenth Amendment claim as without merit, the Court stated that "Congress having acted within the scope of powers delegated to the United States by the Constitution, it has not exceeded the limits of the Tenth Amendment despite the concurrent effects of its legislation upon a matter otherwise within the control of the state." *Id.* at 403.

Here, Congress established the RECA to allow claimants to obtain monetary awards from the government. Congress had the authority to mold and limit the award of monies to the RECA claimants. *See Paul v. United States*, 687 F.2d 364, 367 (Cl. Ct. 1982) ("There is a long history of legislation and administrative action limiting an attorney's share of the funds he helped to procure from the Federal Government."); *Hines v. Lowrey*, 305 U.S. 85, 91 (1938) (upholding fee limitations for attorney compensation); *Margolin v. United States*, 269 U.S. 93, 100 (1925)

(proscribing the amount an attorney may recover under a Federal Regulatory scheme). Further, as stated above in great detail, the Agency acted within its delegated authority when it reasonably interpreted the fee limitation to include the attorney's expenses.

Plaintiffs argue that *Sperry* is inapplicable because "the Department's authority [in *Sperry*] was grounded in Congress's explicit authorization that the Commissioner of Patents prescribe regulations governing the recognition and conduct of agents, attorneys, or other persons representing applicants or other persons appearing before the patent office." (Pls.' Resp. at 36.) Plaintiffs' distinction is misplaced. The Constitution grants Congress the power to enact the RECA, an authority the Plaintiffs do not dispute. As Defendants point out, "[i]f it were true that an express grant of authority in the Constitution is necessary for the government to regulate the payment of attorneys in federal programs, then all of the fee limitations statutes discussed in [both] parties' briefs would be unconstitutional." (Defs.' Reply at 32.)

Further, Plaintiffs assert that "Defendant [sic] disregards the well-settled principle that the 'ultimate touchstone' of any preemption analysis is whether Congress intended federal law to preempt state law." (Pls.' Resp. at 38.) Again, Plaintiffs do not state the appropriate law. When an agency promulgates regulations intended to pre-empt state law, the court's inquiry is limited to "if [the agency's] choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, [the court] should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that [C]ongress would have sanctioned." *Fidelity*, 458 U.S. at 154. "A pre-emptive regulation's force does not depend on express congressional authorization to displace state law." *Id.* Thus,

Plaintiffs' focus on Congress's intent to displace state law is misplaced.  For the foregoing reasons, Plaintiffs' sixth claim for relief — violation of the Tenth Amendment — is denied.

*3.*      *Conclusions*

Based on the foregoing it is therefore ORDERED that:

1.      Defendants' motion to dismiss (# 7) is GRANTED.

2.      The clerk shall forthwith enter judgment in favor of Defendants and against Plaintiffs, dismissing all claims with prejudice.  Defendants may have their costs by filing a bill of costs within eleven days of the date of this order.

Dated this  28th  day of September, 2005.


                          BY THE COURT:


                          s/Edward W. Nottingham
                          EDWARD W. NOTTINGHAM
                          United States District Judge

-24-