IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 04–cv–00827–EWN

KIM HACKWELL; and
KILLIAN, GUTHRO & JENSEN, P.C.,

    Plaintiffs,

v.

UNITED STATES OF AMERICA;
DEPARTMENT OF JUSTICE;
ATTORNEY GENERAL ALBERTO GONZALEZ and His Successors in Office;
and,
DIRECTOR TORTS BRANCH, CIVIL DIVISION, TIMOTHY GARREN and His Successors in Office,

    Defendants.

**ORDER AND MEMORANDUM OF DECISION**

This matter comes before the court on a motion for entry of a declaratory judgment and injunction proposed by Plaintiffs Kim Hackwell and Killian, Guthro & Jensen, P.C. ("KGJ") against Defendants United States of America, Department of Justice, Alberto Gonzales and Timothy Garren and Their Successors in Office (collectively "Defendants"). Plaintiffs request that the court, in light of the Tenth Circuit's holding in *Hackwell v. United States*, 491 F.3d 1229 (10th Cir. 2007), declare regulation 28 C.F.R. § 79.74(b) invalid and enjoin Defendants from enforcing any regulation pertaining to the Radiation Exposure Compensation Act ("RECA") that

includes costs and expenses as part of a limitation on attorney's fees. Jurisdiction is based on 28 U.S.C. § 1331.

# FACTS[1]

## *1. Factual Background*

Kim Hackwell is the daughter of a deceased uranium worker who qualifies to receive a payment under the RECA. (Am. Compl. ¶ 40.) KGJ is a law firm that represents RECA claimants. Ms. Hackwell attempted to hire KGJ but KGJ decided not to represent Ms. Hackwell, allegedly because 28 C.F.R. § 79.74(b)'s fee limitation applies to attorneys' expenses and fee, and KGJ could not afford to represent Ms. Hackwell under this scheme. (*See id.* ¶ 42.)

KGJ and Ms. Hackwell (collectively "Plaintiffs") filed a complaint challenging the regulation. (*See* Am. Compl.) Plaintiffs asserted that "[i]n promulgating 28 C.F.R. § 79.74(b), the Department of Justice ["the Agency"] exceed[ed] the authority granted by Congress to establish regulations necessary to implement the RECA legislation." (*Id.* ¶ 13 [filed Aug. 3, 2004] [hereinafter "Am. Compl."].) Plaintiffs contended that the Agency made 28 C.F.R. § 79.74(b) final on April 22, 2004 and that it is a final agency action for which there is no adequate remedy in a court. (*Id.* ¶ 12.) Therefore, it is subject to judicial review pursuant to the Administrative Procedure Act ("APA"). (*Id.*)

The RECA established the Radiation Exposure Compensation Trust Fund to provide compensation to qualified radiation victims and authorized the Attorney General to administer a

---

[1] The following facts are mainly taken from the court's previous order. (Order and Memorandum of Decision [hereinafter "Order"] [Dkt. No. 29] [filed September 28, 2005].)

program for processing the claims of victims.  42 U.S.C. § 2210.  Section nine of the RECA imposed a limit on the fees of attorneys representing claimants.  42 U.S.C. § 2210 note Sec. 9.  Specifically, section nine states "[n]otwithstanding any contract, the representative of an individual may not receive, for services rendered in connection with the claim of an individual under this Act, more than [ten] per centum of a payment made under this Act on any such claim."  *Id.*

In 2000, Congress amended the RECA.  Pub. L. 106–245, § 9, 114 Stat. 501 (2000).  Section nine now provides:

>   (a)  General Rule.  Notwithstanding any contract, the representative of an individual may not receive, for services rendered in connection with the claim of an individual under this Act, more than that percentage specified in subsection (b) of a payment made under this Act on such a claim.
>   (b)  Applicable Percentage Limitations.  The percentage referred to in subsection (a) is —
>     (1)  [two] percent for the filing of an initial claim; and
>     (2)  [ten] percent with respect to —
>       (A)  any claim with respect to which a representative has made a contract for services before the date of the enactment of the Radiation Exposure Compensation Act Amendments of 2000; or
>       (B)  a resubmission of a denied claim.

42 U.S.C. § 2210 note Sec. 9.

On March 23, 2004, the Agency issued final regulations to implement the 2000 Amendments.  *See* 29 C.F.R. § 79.74.  In relevant part, the regulations state:

>   (b)  Fees.
>
>     (1)  Notwithstanding any contract, the attorney of a claimant or beneficiary, along with any assistants or experts retained by the attorney on behalf of the claimant or beneficiary, may not receive

-3-

> > from a claimant or beneficiary any fee *for services rendered, including costs incurred, in connection with an unsuccessful claim.*
> > (2) Notwithstanding any contract and except as provided in paragraph (b)(3) of this section, the attorney of a claimant or beneficiary, along with any assistants or experts retained by the attorney on behalf of the claimant or beneficiary, may receive from a claimant or beneficiary no more than [two percent] of the total award *for all services rendered, including costs incurred, in connection with a successful claim.*
> > (3) (i) If any attorney entered into a contract with the claimant or beneficiary for services before July 10, 2000, with respect to a particular claim, then that attorney may receive up to [ten percent] of the total award *for services rendered, including costs incurred, in connection with a successful claim.*
> > (ii) If an attorney resubmits a previously denied claim, then that attorney may receive up to [ten percent] of the total award to the claimant or beneficiary *for services rendered, including costs incurred, in connection with that subsequently successful claim.* Resubmission of a previously denied claim includes only those claims that were previously denied and refiled under the Act.

*Id.* (emphasis added).

### *2. Procedural History*

On August 3, 2004, Plaintiffs filed an amended complaint challenging regulation 28 C.F.R. § 79.74(b). (Am. Compl.) On November 15, 2004, Defendants filed a motion to dismiss. (Defs.' Mot. to Dismiss [filed Nov. 12, 2004].) On January 18, 2005, Plaintiffs filed their opposition to Defendants' motion to dismiss. (Pls.' Opp'n to Defs.' Mot. to Dismiss [filed Jan. 18, 2005] ) On March 4, 2005, Defendants filed a reply in support of their motion to dismiss. (Reply to Pls.' Opp'n to Defs.' Mot. to Dismiss [filed Mar. 4, 2005].) This court granted Defendants' motion to dismiss for failure to state a claim. (*See* Order)

On July 5, 2007, the Tenth Circuit found that regulation 28 C.F.R. § 79.74(b) is "contrary to the RECA's plain language and . . . therefore invalid." *See Hackwell*, 491 F.3d at 1233. Accordingly, the Tenth Circuit reversed and remanded the case to this court for proceedings consistent with its opinion.

On October 11, 2007, DOJ posted the below announcement on its website.

> In light of the Federal Circuit Court decision of *Hackwell v. United States*, 491 F.3d 1229, 2007 WL 1935621 (10th Cir. 2007), the Justice Department will no longer be enforcing the regulation concerning attorneys fees whereby attorneys are prohibited from receiving reimbursement for expenses and costs in addition to the statutory fee limits, pursuant to 28 C.F.R. § 79.74(b). Accordingly, attorneys who are successful in obtaining an award for compensation on behalf of their clients under the Radiation Exposure Compensation Act may also receive reimbursement for expenses and costs related to the claim, in addition to the statutory attorney fee. The Department will publish a Notice in the Federal Register discussing this statement of policy at the earliest opportunity.

(Defs.' Opp'n to Pls.' Proposed J. [filed Nov. 21, 2007] [hereinafter "Defs.' Resp."], Ex. 1 [10/11/08 Announcement].)

On November 1, 2007, Plaintiffs filed a brief in support of their proposed judgment seeking (1) a declaration that regulation 28 C.F.R. § 79.74(b) is invalid, and (2) an injunction barring Defendants from enforcing any regulation, pertaining to the Radiation Exposure Compensation Act, that includes costs and expenses as part of a limitation on attorney's fees. (*See* Pls.' Br. in Supp. of Pls.' Proposed J. [filed Nov. 11, 2007] [hereinafter "Pls.' Br."].) Defendants filed their response on November 21, 2007, arguing that (1) an injunction is inappropriate and (2) Defendants' action moots any need for an injunction. (*See* Defs.' Resp.)

Plaintiffs replied on December 7, 2007. (Reply Br. in Supp. of Pls.' Proposed J. [filed Dec. 7, 2007] [hereinafter "Defs.' Reply"].)

**ANALYSIS**

*1.      Standard of Review*

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.* 547 U.S. 388, 391, 126 S.Ct. 1837, 1839 (2006) (internal citations omitted). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *Id.* (internal citation omitted). The discretionary decision, however, "is not left to a Court's 'inclination,' but to its judgment; and its judgment is to be guided by sound legal principles." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416, 95 S.Ct. 2362, 2371 (1975). Most importantly, "[t]he court's discretion is to be exercised in light of the purposes of the statute on which plaintiff's suit is based." *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1230 (10th Cir. 1997) (internal citations omitted).

*2.      Evaluation of Claims*

   *a.      Purpose of the RECA*

In this case, the Tenth Circuit has already made the purpose of the RECA clear, namely, "to remedy the injustice suffered by those exposed to radiation created by the government's

atomic-weapons testing during the Cold War." *Hackwell*, 491 F.3d at 1231. In the court's words "but for the Government's wrongdoing we would not need the RECA." *Id*. at 1238.

This holding is in harmony with Plaintiff's contention that Congress enacted the RECA because "the 'unconscionable' failure to warn or protect . . . Americans against known radiation dangers was a 'tragedy that occurred at the hands of the Federal Government,' inflicting cancer and other diseases upon thousands of victims." (Pls.' Br. at 1 [quoting 134 Cong. Rec. S9411–01 (July 12, 1988) (statement of Sen. Hatch).].)

In *Hackwell*, the Tenth Circuit held that "28 C.F.R. § 79.74(b) contravenes Congress's unambiguous intent." *Hackwell*, 491 F.3d at 1241. The court reasoned that because 28 C.F.R. § 79.74(b) includes costs and expenses as part of a limitation on attorney's fees "an attorney is likely to represent a RECA claimant only when the agency bears most of the client's expenses by providing the documentation necessary to support the client's claim," *id.* at 1237, and that "Congress would not have incentivized attorneys to represent RECA claimants only when the claimants are least in need of an attorney." *Id.* at 1238. The court concluded that the plain meaning of "services rendered" reveals Congress's unambiguous intent to exclude expenses from the attorney-fee limitation." *Id.* at 1241.

### b. *The Four-Factor Test*

The parties agree that this court should apply the Supreme Court's four-factor test in deciding whether injunction is warranted in this case.[2] Defendants argue that Plaintiffs, in their

---

[2] The court notes that the Tenth Circuit has applied an almost identical test to permanent injunction cases. According to the Tenth Circuit "[f]or a party to obtain a permanent injunction,

-7-

brief, "have not attempted to (and cannot) meet any of these criteria," (Defs.' Resp. at 4,) but do not offer any reason for this contention — perhaps relying on the fact that Plaintiffs have the burden of proof. Plaintiff responds that "contrary to Defendant's conclusory assertions, Plaintiffs have fully satisfied the four requirements." (Pls.' Reply at 2.)

### i. *Irreparable Injury*

First, Plaintiffs must make a specific showing that the harm results in irreparable injury to their specific interests. *Davis v. Mineta,* 302 F.3d 1104, 1115 (10th Cir. 2002). Plaintiffs state that "by ruling in favor of Plaintiffs on the merits as a matter of law, the Court of Appeals necessarily resolved the question of irreparable harm in Plaintiffs' favor." (Pls.' Reply at 2.) Moreover, they contend that depriving Plaintiff Hackwell and others of representation by counsel and access to the courts constitute irreparable harm. (*Id.*)

In support of this contention they argue that "by making the attorney responsible for a claimant's expenses, the invalid regulation made it economically impossible to represent some claimants, including Plaintiff Hackwell," (*id.*,) and that "[i]n the absence of such an injunction, attorneys will be deterred from representing claimants and those claimants will be deprived of legal representation until such time as another challenge to the regulation's validity is brought to this Court." (*Id.* at 6.)

---

it must prove: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.' *Prairie Band Potawatomi Nation v. Wagnon,* 476 F.3d 818, 822 (10th Cir. 2007) (internal citation omitted). In this case, the Tenth Circuit's decision on the merits, in *Hackwell*, satisfies the first prong.

The court agrees that considering DOJ's prior violation of the RECA, and the possibility of future violations, *see Analysis infra* § 2(c), claimants, in the absence of an injunction, would be deprived of competent representation in court. This irreparable harm would clearly be at odds with the purpose of Congress in enacting the RECA, *i.e.*, "to remedy the injustice suffered by those exposed to radiation created by the government's atomic-weapons testing during the Cold War." *Hackwell*, 491 F.3d at 1231; *see also Mineta,* 302 F.3d at 1115 (citing *Sierra Club v. Marsh*, 872 F.2d 497, 504 [1st. Cir. 1989] ["The difficulty of stopping a bureaucratic steam roller, once started . . . seems to us . . . a perfectly proper factor for a district court to take into account . . . on a motion for preliminary injunction."]). Therefore, the court concludes that Plaintiffs have demonstrated existence of an irreparable harm.

    ii.  ***Inadequate Remedy at Law***

Next, Plaintiffs must show that remedies available at law are inadequate to compensate for their injury. *See Allen W. Hinkel Dry Goods Co. v. Wichison Industr. Gas Co.*, 64 F.2d 881 (10th Cir. 1933) (holding that the gas company did not have an adequate remedy at law where the damages for breach of contract during the period for appeal would be exceedingly difficult to ascertain.)

Plaintiffs argue that "there are no remedies at law, including monetary damages, that would compensate Plaintiffs for these harms. Nor has Defendant suggested the availability of any such remedy." (Pls.' Br. at 3.) Given the nature of the irreparable harm in this case, *i.e.*, deprivation from competent representation in court, *see* Analysis *supra* § 2(b)(i), the court agrees with Plaintiffs.

### iii. Balance of Hardship

Plaintiff must also show that "the threatened injury outweighs the harm that the injunction may cause the opposing party." *Wagnon,* 476 F.3d at 822. Plaintiffs argue that:

> [t]he balance of hardships weighs heavily in favor of injunctive relief. Any regulation which includes costs within the cap on attorney fees would place a difficult obstacle in the path of RECA claimants seeking to obtain the benefits intended for them by Congress. At the same time, enforcement of the RECA statute in accordance with its plain text imposes no hardship at all on the Department of Justice. Indeed, the injunction would simply require the Department to enforce the limit on attorney fees as it had enforced it from 1990 until the promulgation of 28 C.F.R. § 79.74(b) in 2004.

(Pls.' Reply at 3.) The court cannot imagine, and Defendants have not offered, a scenario under which complying with the Tenth Circuit's ruling would cause the DOJ any hardship. On the other hand, enforcing any new regulation contrary to the plain language of the Congress, as stated by the Tenth Circuit, not only would create a new obstacle for claimants but would defeat the purpose of the RECA. Therefore, the threatened injury outweighs the harm that the injunction may cause the DOJ.

### iv. Public Interest

"The court must also weigh and consider the public interest in deciding whether or not to grant the injunction requested." *Public Service Co. of Colorado v. Andrus*, 825 F.Supp. 1483, 1509–10 (D.Id. 1993), *modified on other grounds* by, 1993 WL 388312 (D.Id. 1993) (citing *Sierra Club v. Penfold*, 857 F.2d 1307, 1318 [9th Cir.1988].).

"The plain meaning of 'services rendered' reveals Congress's unambiguous intent to exclude expenses from the attorney-fee limitation." *Hackwell*, 491 F.3d at 1241. The "dispute

has not arisen because of a lack of clarity or other shortcoming of the law", but rather from DOJ's refusal to comply with the law. *Andrus*, 825 F.Supp. at 1509–10. This refusal "invokes a public interest of the highest order: the interest in having government officials act in accordance with law." *Id*. (citing *Olmstead v. United States*, 277 U.S. 438, 485, 48 S.Ct. 564, 575 [1928]); *see also Dairy Maid Dairy, Inc. v. United States*, 837 F.Supp. 1370, 1382 (E.D.Va. 1993) (granting injunction where "public interest was promoted by protecting integrity of procurement process and by seeing that government followed its substantive duties under procurement statutes and regulations."). Therefore, public interest favors imposing an injunction in this case. *See id.* (enjoining the Department of Energy "from any further transportation, receipt, processing, and storage of spent nuclear fuel at the Idaho National Engineering Laboratory until the comprehensive environmental impact statement is completed, reviewed, and any challenges to the statement are resolved.").

      Moreover, as mentioned above, Plaintiffs argue and the court agrees that:

> "[i]n the absence of such an injunction, attorneys will be deterred from representing claimants and those claimants will be deprived of legal representation until such time as another challenge to the regulation's validity is brought to this Court. In such a challenge, the legal issues would be precisely the same as those that were resolved in Plaintiffs' favor in this case. There is no public interest in subjecting this Court to series of challenges involving issues of law that were resolved by the Court of Appeals against Defendants in this action.

(Pls.' Reply at 6.)

      The court thus concludes that Plaintiffs satisfy the requirements of the four-factor test.

    ***c.***       ***Future Violations and Mootness***

The court now turns to the additional factors it needs to consider before deciding whether injunction is an appropriate remedy in this case, *i.e.*, mootness (Defendants' alleged defense), and future violations (Plaintiffs' claim).

"The most important factor for the district court to consider is whether the facts indicate a danger of future violations of the Act." *Roe*, 124 F.3d at 1230. The purpose of an injunction is to prevent future violations. *Id*.

> [T]he moving party must satisfy the court that relief is needed. The necessary determination is that there exists *some cognizable danger of recurrent violation*, something more than the mere possibility which serves to keep the case alive. . . . To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations.

*Id.* (reversing the district court's denial of injunctive relief) (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303 [1953]) (emphasis added).[3]

"The case may nevertheless be moot if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.'" *W. T. Grant Co.*, 345 U.S. at 633, 73 S.Ct. at 897–898 (internal citation omitted); *see also Building and Const. Dept. v. Rockwell Intern. Corp.*, 7 F.3d 1487, 1492 (10th Cir 1993). "The burden is a heavy one." *W. T. Grant Co.*, 345 U.S. at 633, 73 S.Ct. at 897–898 (emphasis added). "[T]he court's power to grant injunctive relief survives discontinuance of the illegal conduct." *Id.* (internal citations omitted).

---

[3] The court noted that "we are mindful that this was post-judgment conduct, brought to the district court's attention in plaintiff's motion to amend the judgment under Fed.R.Civ.P. 59, and that rulings on such post-judgment motions are also within the court's sound discretion." *Id*.

In *Roe,* the court found that "defendant refused to revoke the offending provisions even after the district court held them unlawful." *Id.* at 1231. The Tenth Circuit concluded that defendant's "defiant hostility to amending the Policy indicated 'some cognizable danger of recurrent violation,' and that appropriate enforcement action by the court was required." *Id*. (internal citation omitted).

In this case, for the reasons stated below, the facts before the court indicate a similar "hostility" to amending regulation 28 C.F.R. 79.74(b) that persuades the court to conclude that there exists "some cognizable danger of recurrent violation." *Id.* Defendants have not discharged their heavy burden of demonstrating that "there is no reasonable expectation that the wrong will be repeated." *W. T. Grant Co.*, 345 U.S. at 633, 73 S.Ct. at 897–898.

> i. *Almost One Year After the Tenth Circuit Ruling Invalidating Regulation 28 C.F.R. 79.74(b) it Still Reads the Same*

The Tenth Circuit's decision invalidating Regulation 28 C.F.R. 79.74(b) was entered on July 5, 2007. *See Hackwell*, 491 F.3d 1229. The Department of Justice has not complied with the Tenth Circuit's ruling and, as of July 15, 2008, the regulation still includes costs and expenses as part of a limitation on attorney's fees. *See* 28 C.F.R. 79.74(b).

Defendants fail to explain why they have not complied with the Tenth Circuit's order during the past year. In the light of this hard fact, and contrary to Defendants' argument, Defendants' statement that "they have posted a notice (in October 2007) on their website explaining the ramifications of the Tenth Circuit's decision and stating that the Department will no longer interpret the regulation to cap costs incurred by a law firm under the fee cost cap"

(Defs.' Resp. at 5,) does not render the need for an injunction moot. Moreover, as explained below, the announcement itself is in contradiction with the Tenth Circuit's ruling.

### ii. *DOJ's Non-Complying Announcement of Compliance*

Defendants attached a copy of DOJ's October 11, 2007 announcement to their response brief. (Defs.' Resp., Ex. 1 [10/11/08 Announcement].) This announcement, posted on DOJ's website, stated that:

> attorneys who *are successful* in obtaining an award for compensation on behalf of their clients under the Radiation Exposure Compensation Act may also receive reimbursement for expenses and costs related to the claim, in addition to the statutory attorney fee. The Department will publish a Notice in the Federal Register discussing this statement of policy at the earliest opportunity.

*Id.* (emphasis added).

Relying on the Tenth Circuit's analysis, Plaintiffs contend that "this interpretation is at odds with the Court of Appeals decision in this case." (Pls.' Reply at 4.) The Tenth Circuit held that "payments that reimburse the attorney for expenses advanced to the client are in the nature of repayment 'of an interest-free loan,' and are not at all contingent on the outcome of the claim." *Id*. (citing *Hackwell*, 491 F.3d at 1239). Therefore, the court agrees that the language of the DOJ's announcement is in violation of the Tenth Circuit's ruling in *Hackwell*.

### iii. *DOJ's Wrongful Assumption of Discretion to Modify Regulation 28 C.F.R. 79.74(b) with Respect to Costs and Expenses*

DOJ's role in constructing the RECA's attorney-fee limitation, 42 U.S.C. § 2210, is non-discretionary. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."

*Hackwell*, 491 F.3d at 1233 (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–83 [1984]) (emphasis added).

Applying the *Chevron* test, the Tenth Circuit in *Hackwell* concluded that it need not "determine whether the regulation is arbitrary, capricious, or contrary to the statute" because the Congress has directly addressed the precise question at issue. *Hackwell*, 491 F.3d at 1241 ("[T]he plain meaning of 'services rendered' reveals Congress's unambiguous intent to exclude expenses from the attorney-fee limitation.") Therefore, the only task left for the DOJ in this case is to give effect to the unambiguously expressed intent of Congress. *Id.*

However, as stated below, the acts of the DOJ suggest that it is doing more than "giving effect to this unambiguous express intent of Congress." *See Chevron*, 467 U.S. at 842–44, 104 S.Ct. at 2781–83. This, in turn, gives rise to "some cognizable danger of recurrent violation" in this case.

> Plaintiffs allege that:
>
> Discussions with Defendant's attorney subsequent to the Tenth Circuit's decision have indicated to Plaintiffs that the Department of Justice may seek an order that reaches far beyond the appellate court's decision and makes substantive changes in the regulation of payments to attorneys. This Court should reject any such proposals as inconsistent with the Tenth Circuit's opinion and mandate. The proper course of action for the DOJ is to undertake the appropriate rulemaking under Sec. 6(j) of the statute.

(Pls.' Br. at 5.) Defendants do not deny the occurrence of the above discussion and they concede that they intend to limit costs award by reasonableness or success. (*See* Defs.' Resp. at 6. ["contrary to Plaintiff's assertion, and as Defendants previously explained to Plaintiffs, Defendants do not intend to limit cost awards by reasonableness or success *without further*

*rulemaking* as appropriate under Sec. 6(j) of the statute."].) Defendants also state that they "will soon commence the formal notice and comment proceeding to insure that all parties have a voice in drafting a new regulation" that is supposed to "modify the current regulation and remove the language 'including costs incurred' from 28 C.F.R. §§ 79.74(b)(1), (b)(2), and (b)(3)(I) and thereby bring the regulation into compliance with the Tenth Circuit's ruling." (Defs.' Resp. at 5.)

However, the Tenth Circuit language requires that Defendants must remove the language "including costs incurred" from 28 C.F.R. §§ 79.74(b) — not remove and modify it in a way that causes further violations of the Act. As stated above, the Tenth Circuit's holding made it clear that Congress's express intent was to exclude expenses from the attorney-fee limitation. *See Hackwell*, 491 F.3d at 1241. Modifying 28 C.F.R. §§ 79.74(b) to limit cost awards by reasonableness or success, instead of excluding it, is therefore contrary to the Congress's express intent. The DOJ does not have the discretion to do so and the assertion that it intends to do it under Sec. 6(j) of the statute is irrelevant. (*See* Defs.' Resp. at 6.)

Additionally, Defendants have failed to assure the court, in any way, that the new regulation will not include some element of costs and expenses within the limitation on attorney's fees, as required by the Tenth Circuit decision. Therefore, again, not only have Defendants failed to prove that "there is no reasonable expectation that the wrong will be repeated," *W. T. Grant Co.*, 345 U.S. at 633, 73 S.Ct. at 897–898, they strongly suggest that they intend to repeat the wrong. Thus, in absence of such a proof, Defendants' refusal to amend

regulation 28 C.F.R. 79.74(b) persuades the court to conclude that there exists "some cognizable danger of recurrent violation." *Roe*, 124 F.3d 1230.

### 3. *Conclusion*

The court is satisfied that there is a reasonable expectation of future injurious conduct. The Supreme Court in *United States v. Oregon State Medical Society* warned the lower courts "to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption." 343 U.S. 326, 333, 72 S.Ct. 690, 695–96 (1952). "Plaintiff need not rely solely on defendant's assurances that it will not engage in the offensive conduct at some later date." *Id*.

The circumstances in this case indicate a danger of recurrent violation of the RECA and require appropriate enforcement action by the court. *See Roe*, 124 F.3d at 1230.

Based on the foregoing, it is therefore ORDERED that:

1. Plaintiffs' motion for entry of declaratory judgment and injunction (# 43) is GRANTED.

Dated this 23rd day of July, 2008.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge